ELIJAH SMITH *vs*. AZRO H. JONES.

Penobscot.    Opinion May 5, 1884.

*Arrest.    Witness.    Contempt of court.    Practice.*

An action for damages does not lie against a plaintiff for the arrest upon civil process of a defendant, who was at the time privileged from arrest as a witness (without a writ of protection) returning home from court. The remedy consists in an application for a discharge from arrest; the most expeditious mode being by summary motion to the court or some judge thereof.

A person ordering an arrest of a witness upon civil process, may be punished for contempt of court for interference with its business.

ON EXCEPTIONS and motion to set aside the verdict.

An action to recover damages for causing the plaintiff's arrest in the Province of New Brunswick, and his imprisonment for two days, when on application to the court there he was discharged because he was at the time privileged from arrest, as he was returning home from Woodstock, New Brunswick, where he had been attending court as a witness. The plea was the general issue. The verdict was for the plaintiff in the sum of eight hundred dollars.

Other material facts stated in the opinion.

*Barker, Vose and Barker*, for the plaintiff.

The plaintiff was a witness in a foreign jurisdiction, and as such entitled to the fullest extent of the law, granting him privilege from arrest. *Norris* v. *Beach*, 2 Johns. 294; *Seaver* v. *Robinson*, 3 Duer, 622; *Pell's case*, 1 Rich. 197; *Thompson's case*, 122 Mass. 428; *Wood* v. *Neale*, 5 Gray, 538; *May* v. *Shumway*, 16 Gray, 86; *Hopkins* v. *Colburn*, 1 Wend. 292; *Person* v. *Grier*, 66 N. Y. 124.

The earlier English cases treated this privilege rather as the privilege of the court, punishable, if invaded, by fine and imprisonment for contempt. To a certain extent this doctrine has been recognized in this country. This privilege may extend to

the court while the trial is in progress or before it has commenced; but when, as in this case, the trial had closed and the witness was half way home, the court has had all the protection necessary for the transaction of its business, and the only person to whom the privilege becomes of importance is the witness himself. How can it be said to be solely a privilege of the court when the witness himself can waive it? It has been held a personal privilege which the witness may waive. 1 Whar. Ev. § 390; 1 Greenl. Ev. § 316; *Brown* v. *Getchell*, 11 Mass. 13; *Chase* v. *Fish*, 16 Maine, 132.

The English court in the case of *Whalley* v. *Pepper*, 32 E. C. L. 603, lays down the general rule that where a person causes the arrest of a privileged party with full knowledge of the facts, he is liable in an action of damages; and the same rule is intimated in *Andrews* v. *Martin*, 104 E. C. L. 369.

The decisions in this country seem to indicate two separate rights and two separate remedies. (1) The invasion of the rights and dignity of the court, punishable by fine and imprisonment for contempt. (2) The invasion of the right of personal liberty of the witness for which he may maintain an action against any person causing his arrest, who does so with a full knowledge of the facts. *In re Healey*, 38 Am. R. 713; 1 Chitty's Pl. 128–9; 7 Johns. 538; 9 Johns. 116; 3 T. R. 183; Cooley, Torts, 189, and cases cited; *Churchill* v. *Siggers*, 3 El. & Bl. 929. Counsel also cited: *Grainger* v. *Hill*, 4 Bing. (N. C.) 212; *Krug* v. *Ward*, 77 Ill. 603; *Shaw* v. *Reed*, 16 Mass. 450; *Foster* v. *Dow*, 29 Maine, 442; *Moulton* v. *Lowe*, 32 Maine, 466; *Mussey* v. *Colville*, Alb. L. J. March 17, 1883; *Savage* v. *Brewer*, 16 Pick. 456.

*J. Hutchings*, for the defendant, cited: *Magnay* v. *Burt*, 5 Ad & El. N. S. 381; Cooley, Torts, 192; *Stokes* v. *White*, 1 C. M. & R. 223; *Yearsley* v. *Heane*, 14 Mees. & W. 322.

PETERS, C. J. The plaintiff sues the defendant for causing his arrest upon a civil process in defendant's name, in the Province of New Brunswick, while the plaintiff was returning from a court in the Province, at which he had been in attendance as a

witness, to his home in Maine. The defendant knew that the plaintiff was a returning witness at the time. Our view of the law is that the action cannot be maintained.

The question is satisfactorily solved by an examination of the nature and extent of the privilege from arrest, which the law accords to witnesses.

It is not a natural right. It is contrary to common right. The plaintiff was arrested in pursuance of a general right, in a manner precisely as any other debtor could have been. The claim was suable. The court had jurisdiction. The capias was legally issued. He stood upon the footing of all debtors.

The plaintiff's privilege was not an absolute right. It was not an absolute right of freedom from arrest, such as belongs to members of the royal family of England, or to ambassadors and some others; not the case of total exemption from arrest, such as the law extends to persons discharged from arrest by bankruptcy or insolvency proceedings; or where the law forbids arrest for the collection of demands. The right is afforded by the law not so much for witnesses as for parties to suits. Some cases assert that it is a privilege of the court and not of the witness. Other cases incline to the idea that it is a privilege of parties rather than of courts. But that is a distinction without difference. The idea is the same. Courts exist for the benefit of parties. It is a policy of the law established for the facilitation of the public business. It is a protection thrown about a witness more for the sake of others than himself. It is clear that a person ordering an arrest of a witness, may be punished for contempt of court for interference with its business.

It is, at most, a conditional or contingent right of the witness. He may take it or not as he pleases. All the authorities affirm that the privilege may be waived. Therefore, the arrest cannot be void; is only voidable. The arrest remains valid until avoided. And the witness can avoid the arrest only by applying to the court for a discharge. He waives the privilege unless he applies for a discharge.

The plaintiff complains that a refusal to uphold his action refuses him a remedy. That is not so. We have just intimated

what the proper remedy is. It is an application for a discharge from the arrest. He may be discharged by a judge upon summary motion. He may sue out a *habeas corpus.* He may procure his writ of protection in advance of starting for or from court, if circumstances make it reasonable to ask the mediation of court for the purpose. The law does not declare that a witness shall not be arrested, but gives to him the right to free himself from arrest, if he desires to, and points out several ways by which it may be accomplished. It is not a right so much to avoid being arrested, but is a right to terminate the arrest. It is said, however, that a person may be under such pressure of imprisonment as to be powerless to obtain the action of a court or judge before suffering actual incarceration. This would not often happen. A writ of protection would ordinarily prevent the dilemma. An officer might be liable for an abuse of authority, if he exceeds his duty and acts roughly and oppressively. And, of course, an action would lie against the creditor who proceeds maliciously and without probable cause.

How can a creditor know that his debtor, who is a witness, will insist upon the privilege, until the debtor asserts it? And how can he know that the court will grant a discharge if asked for? It is to some extent a discretionary matter with a court or judge, whether a witness shall be discharged upon arrest. How can this discretion be anticipated by a creditor? And why should the creditor 'be required at his peril to correctly settle the question whether the debtor is at court in good faith or not,—or whether he has overstaid his privilege,—or whether unnecessarily loitering on the way,—judicial questions that can be easily and summarily settled by a judge in or out of court without much expense to parties. It is not at all unreasonable to cast upon the court, and to relieve parties from, the responsibility of such questions.

The precise question here presented has not received very much attention from courts, and there is an almost total absence of judicial expression in favor of the plaintiff's position where the privilege is at common law and not by statute. The remedy by action was established long ago in New York by statutory

enactment, which is an implication that the remedy did not exist there at common law. And this accounts for intimations in cases in that state that damages for a breach of the privilege are recoverable. Paine and D. Prac. Arrest. *Snelling* v. *Watrous*, 2 Paige, 314; *Salhinger* v. *Adler*, 2 Robt. 704. Some English statutes give a right of action in some cases, or establish other special remedy, for a violation of the privilege of freedom from arrest; from which an implication arises that no such remedy exists at the common law in that country. Tidd's Practice lays down the various remedies that are available for a violation of the privilege from arrest belonging to witnesses and all other persons or parties in necessary attendance upon courts, and omits all mention of a right of action for damages. Text writers generally are silent upon the question. In 2 Add. Torts (4 Eng. ed. ), 796, it is said, however, that "the privilege does not form the ground of any action at law." And in Cooley's Con. Lim. (5th ed.), 162, (*135), it is said, in note : "The arrest is only voidable; and in general the party will waive the privilege unless he applies for discharge by motion or on *habeas corpus*."

Not many decided cases touch the point. The early experimental actions were against officers, and all of them failed. But much of the reasoning of the courts really went against any action, disregarding any distinction between officer and party. The early cases are cited and commented upon in *Carle* v. *Delesdernier*, 13 Maine, 363. See *Chase* v. *Fish*, 16 Maine, 132. Some phases of the question are touched in later cases. *Wilmarth* v. *Burt*, 7 Metc. 257; *Aldrich* v. *Aldrich*, 8 Metc. 102; *Edward Thompson's Case*, 122 Mass. 428; *Person* v. *Grier*, 66 N. Y. 124. Several English cases take strong ground against the maintenance of such an action. In *Yearsley* v. *Heane*, 14 M. & W. 322, it is said : "The protection is limited to the fact of the individual so arrested being entitled to be discharged." In the same case it was said by POLLOCK, C. B., "Did the legislature mean to give more than this, that if the party was arrested he might be discharged,— whereby he has the full benefit of the protection? I think not." *Ewart* v. *Jones*, 14 M. & W. 774; *Stokes* v. *White*, 1 Crom. M. & R. 223; *Rideal* v. *Fort*, 11

Ex. 847; *Magnay* v. *Burt*, 5 Ad. & El. 381. In a note to *Stokes* v. *White*, *supra*, in the edition by Hare and Wallace, careful annotators, it is said, upon the authority of the cases determined in the court of Exchequer Chamber, that "an arrest by the sheriff, under a writ from any of the Queen's Courts, of a person privileged from arrest by reason of attendance as a witness under the process of another court, does not form the ground of any action at law for damages, but is only the subject of an application to the court, under whose authority the party had been compelled to appear as a witness; the privilege being, not that of the person, but that of the court, and therefore of discretionary allowance."

*Exceptions sustained.*

WALTON, BARROWS, DANFORTH and LIBBEY, JJ., concurred.