## Case No. 215.

### ALLEN v. BLUNT.

[1 Blatchf. 480;[1] 1 Fish. Pat. Rep. 303; 8 N. Y. Leg. Obs. 105.]

Circuit Court, S. D. New York. Oct. Term, 1849.

CIRCUIT COURTS—JURISDICTION—SUBJECT MATTER —INFRINGEMENT OF PATENT—SERVICE OF WRIT —ACTION ON JUDGMENT.

1. In actions arising under the patent laws, the jurisdiction of the circuit courts of the United States does not depend upon the citizenship of the parties, but upon the subject matter.

2. The 11th section of the judiciary act of September 24th, 1789, (1 Stat. 79,) does not make it necessary, in such actions, that either the defendant or the plaintiff should be an inhabitant of the state where the suit is brought.

[Cited in Thayer v. Wales, Case No. 13,-872.]

3. It is sufficient to give jurisdiction, in such cases, that the writ is served personally upon

[1][Reported by Hon. William Cranch, Chief Judge.]

[1][Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

the defendant in the district in which the suit is brought.

[Cited in Thayer v. Wales, Case No. 13,-872.]

4. On an injunction bill to restrain the infringement of a patent, where there is no dispute as to the title, the circuit courts of the United States have jurisdiction, under section 17 of the patent act of July 4th, 1836, (5 Stat. 124,) to refer the case to a master, to take an account of the profits of which the plaintiff has been deprived by reason of the infringement.

[Cited in Hoffheins v. Brandt, Case No. 6,-575.]

5. A. filed a bill in equity against B., in the circuit court of the United States in Massachusetts, for the infringement of a patent: the bill was taken pro confesso, and a decree rendered against B. for a large amount, he not appearing in the case. Afterwards, A. brought an action of debt in this court against B., on the decree: *Held*, that A. could not recover, because it did not appear affirmatively on the face of the Massachusetts record, that B. was personally served with process in that district.

At law. This was an action of debt, brought [by Ethan Allen] upon a final decree of the circuit court of the United States for the district of Massachusetts, made in a suit in equity in that court founded upon letters patent granted to the plaintiff on the 3d of August, 1844, [No. 461,] for an "improvement in the method of constructing locks for fire-arms." The bill was filed on the 24th of June, 1846, against Orison Blunt and one William I. Syms, for an injunction, and for an account of the profits derived from an alleged infringement of the patent. It was taken pro confesso against Blunt, and a reference had before a master to take and state an account of the profits of which the plaintiff had been deprived by the infringement. The report of the master was confirmed, and a final decree entered for the sum of $11,700, being the amount of the profits reported, and for $397.84, the taxed costs. On the trial here, before Mr. Justice Nelson, in November, 1848, a certified copy of the record of the proceedings and decree in the suit in Massachusetts was produced on the part of the plaintiff, proving the above facts. But, it appeared from recitals in the record, that Allen was a citizen and resident of Norwich in the state of Connecticut, at the time the bill in equity was filed, and that Blunt and Syms were then citizens and residents of the city and state of New-York. The subpoena to appear and answer, which was set forth in the record, was directed to the defendants, and to it was subjoined the memorandum required by the twelfth rule in equity. The return by the marshal of the service of the subpoena was also set forth, in these words: "United States of America, Mass. Dist., ss: Boston, June 24, 1846. On this twenty-fourth day of June, 1846, I gave to the within named Orison Blunt, in hand, a true and attested copy of the within notice. I have made diligent search for the within named William I. Syms, and cannot find him within my district, so that I can notify him of the with-

in process. Isaac O. Barnes, Marshal." The plaintiff rested his case on the record, and the defendant objected to a recovery on the grounds: 1. That the court in Massachusetts had no jurisdiction of the suit in equity there, inasmuch as it appeared on the face of the record that neither Allen nor Blunt were citizens or inhabitants of Massachusetts when that suit was commenced. 2. That the damages in the suit in equity were assessed by a master of the court, and not by a jury. The court overruled the objections, and the jury found a verdict for the plaintiff, for $12,097.84 debt, and $786.25, interest thereon at six per cent., by way of damages. The defendant now moved for a new trial, on a bill of exceptions.

Francis B. Cutting, for the plaintiff

I. The circuit courts of the United States have original jurisdiction of all suits arising under the patent laws, as well in equity as at law, with authority to grant injunctions according to the course of courts of equity, and with capacity to compel an account and to grant any ancillary relief necessary for the full protection of a plaintiff's rights. Act July 4, 1836, § 17; Act Feb. 15, 1819, (3 Stat. 481;) Conk. Pr. 65. II. The jurisdiction of those courts in patent cases does not depend upon and is not affected by the citizenship or character of the parties to or the amount involved in the controversy. Conk. Pr. 61; Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738; Bank of U. S. v. Planters' Bank, 9 Wheat. [22 U. S.] 904. And there are other instances of jurisdiction irrespective of the character of the parties. Judiciary Act 1789, § 12; Act March 2, 1833, § 3, (4 Stat. 633.) III. The provision contained in the 7th amendment to the constitution, that in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, has no application to suits in equity. 3 Story, Comm. § 1762; Parsons v. Bedford, 3 Pet. [28 U. S.] 446. The phrase "common law" is used in contradistinction to "equity, and admiralty, and maritime jurisprudence."

Seth P. Staples and John B. Staples, for the defendant.

I. The acts of congress, in reference to the jurisdiction of the circuit courts, give them no jurisdiction in equity, except where a plain, adequate and complete remedy cannot be had at law. Article 7, Const. Amend. U. S.; Const. U. S. art. 3, § 2; 3 Story, Comm. §§ 1757–1762, for the history of this article and of the amendment; Judiciary Act Sept. 24, 1789, §§ 9, 12, 13, 16, (1 Stat. 76, 79, 80, 82.) The general jurisdiction clause of the 11th section of the act of 1789 is controlled and restricted by the other sections above cited. II. In this case there was such remedy at law. The complaint was for a tort, and for damages, which belong to a

jury exclusively. III. If the jurisdiction in equity attaches for any purpose, the extent and nature of its exercise depend on the character and object of the suit. If the aid of equity be required only as preliminary or auxiliary, its power ceases when that object is effected. Baker v. Biddle, [Case No. 764.] IV. The patent act of July 4th, 1836, (5 Stat. 117,) does not confer jurisdiction to assess damages in equity without a jury. Sections 14 and 17 of that act restrict the jurisdiction in equity to the injunction, and the remedy stops there. V. The remedy and the wrong, in this case, being both creatures of the statute, must follow the statute, and cannot be extended by the rules applicable to courts of chancery in England and in this country. Hinsdale v. Larned, 16 Mass. 65; City of Boston v. Shaw, 1 Metc. [Mass.] 130; Moncrief v. Ely, 19 Wend. 405; 2 Saund. Pl. & Ev. 829; Baker v. Biddle, before cited. VI. There was a fatal defect of jurisdiction in the suit in Massachusetts, by reason of a want of citizenship; neither the plaintiff nor the defendant being a citizen of the state where the suit was brought. Kitchen v. Strawbridge, [Case No. 7,854;] Shute v. Davis, [Id. 12,828;] 1 Pet. C. C. 431, [Craig v. Cummins, Case No. 3,331;] Judiciary Act 1789, § 11.

NELSON, Circuit Justice. 1. Article 1, § 8, Const. U. S. provides, among other things, that congress shall have power "to promote the progress of science and useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries"—and "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers."

The first act of congress carrying into execution the above power was passed on the 10th of April, 1790, (1 Stat. 109,) the fourth section of which provided, that if any person should make or vend within the United States any art, manufacture, &c., the exclusive right of which should have been granted by patent to any person, every person so offending should forfeit and pay to the patentee such damages as should be assessed by a jury in an action on the case. This act was repealed by Act Feb. 21, 1793, (1 Stat. 318,) the fifth section of which enacted, that the party infringing should forfeit and pay three times the price for which the patentee had usually sold the article, which might be recovered "in the circuit court of the United States, or any other court having competent jurisdiction." The act of the 17th of April, 1800, (2 Stat. 37,) repealed the fifth section of the act of 1793, and provided, that the party infringing should pay to the patentee a sum equal to three times the actual damage sustained by him, which should be recovered in an action on the case, "in the circuit court of the United States having jurisdiction thereof." The present act, passed July 4, 1836, (5 Stat.

123, § 14,) provides, that the court may increase the damages, not exceeding three times the amount of the verdict, and that such damages may be recovered by action on the case, "in any court of competent jurisdiction." Section 17 of that act provides, that all actions, suits, &c., in cases arising under the patent laws, shall be originally cognizable "by the circuit courts of the United States, or any district court having the powers and jurisdiction of a circuit court."

It will be seen, by this brief reference to the acts of congress, that the remedy prescribed in behalf of the patentee, to enable him to recover damages for the violation of his right, is limited to a circuit court of the United States having jurisdiction of the case, leaving the question as to the appropriate circuit in which to bring the action in any given case, to be determined by the existing provisions on that subject. But the remedy is given to any patentee, against any person who has been guilty of an infringement, without any restriction as to the parties.

By the eleventh section of the judiciary act of 1789, (1 Stat. 78,) it is provided, that the circuit courts shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and (1.) "the United States are plaintiffs or petitioners; or" (2.) "an alien is a party; or" (3.) "the suit is between a citizen of the state where the suit is brought, and a citizen of another state."—"But no person shall be arrested in one district for trial in another, in any civil action before a circuit or district court. And no civil suit shall be brought before either of said courts against an inhabitant of the United States, by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." In actions commenced under the first branch of this section, where the jurisdiction of the court depends upon the citizenship of the parties, it has been held, that the suit must be brought in the state in which the party plaintiff or defendant was at the time a resident or inhabitant. Kitchen v. Strawbridge, [Case No. 7,854;] Shute v. Davis, [Id. 12,828; Craig v. Cummins, Id. 3,331.] And the citizenship must appear upon the face of the record. Bingham v. Cabbot, 3 Dall. [3 U. S.] 382; Abercrombie v. Dupuis, 1 Cranch, [5 U. S.] 343; Wood v. Wagnon, 2 Cranch, [6 U. S.] 9. Upon this clause of the section, and the authorities, it is contended on the part of the defendant, that the circuit court in Massachusetts had no jurisdiction over the suit in equity, inasmuch as it did not appear upon the record that either of the parties was at the time a citizen or resident of the state of Massachusetts, but the contrary; the one being a citizen and resident of Connecticut,

and the other of New-York. But we think the objection not well founded. The object of the clause is an enumeration of the classes of cases in which the jurisdiction of the court is made to depend upon the character of the parties; and it is founded upon section 2 art. 3 of the constitution. It has no bearing upon cases arising under the patent laws, where jurisdiction rests upon the subject matter, irrespective of parties or amount. The parties may be citizens of the same state, and the amount may be large or small.

The latter clause of the section referred to is general, and applies to all suits commenced in the circuit or district courts. A defendant cannot be arrested in a district other than that in which the suit is brought, nor can the suit be commenced against an inhabitant of the United States, by original process, in any other district than that of which he is an inhabitant, or in which he is found at the time of serving the writ. These are the only restrictions that apply to the power or right of the court to exercise jurisdiction over the person, in the present case.

2. The seventeenth section of the act of July 4, 1836, gives jurisdiction to the circuit courts of the United States, in all cases arising under any law of the United States granting or confirming to inventors the exclusive right to their inventions or discoveries, "as well in equity as at law;" "which courts shall have power, upon bill in equity filed by any party aggrieved, in any such case, to grant injunctions, &c." The jurisdiction thus conferred upon the circuit courts in patent cases in equity, is as broad and general in the terms of the grant, as is found in respect to the particular cases of jurisdiction enumerated in the eleventh section of the judiciary act of 1789, and in reference to which it has been repeatedly held, that jurisdiction exists independently of the local laws of the states; and is the same, in its nature and extent, as the equity jurisdiction in England, from which it was derived. Robinson v. Campbell, 3 Wheat. [16 U. S.] 212, 221; U. S. v. Howland, 4 Wheat. [17 U. S.] 108; Parsons v. Bedford, 3 Pet. [28 U. S.] 433, 447; Gordon v. Hobart, [Case No. 5,609.] The following cases will show that it is the settled practice of the English chancery, on injunction bills filed by the patentee, when there is no dispute about the title, to refer the case to a master, to take and state an account of the profits which the defendant has made by the use of plaintiff's invention, instead of sending it to a court of law to assess the damages. The defendant is regarded as having been in the use and enjoyment of property that belonged exclusively to the patentee, and as being bound in equity to account for the profits. Crossley v. Derby Gas Light Co., Webst. Pat. Cas. 119, 3 Mylne & C. 428; Hind. Pat. 354, 355, 361, 363; Bacon v. Jones, 4 Mylne & C. 433, 436; Pierpont v. Fowle, [Case No. 11,152;] Curt. Pat. §§ 346, 348; Ogle v. Ege, [Case No. 10,462.]

The question before us is one of power, not whether the case was one fit and proper to be sent to the master, nor whether his report was properly confirmed. If the circuit court in Massachusetts had jurisdiction over the subject matter and parties, the correctness of the decree cannot be called in question collaterally.

3. But, on looking into the record, we find a defect, not noticed on the argument. That is, the omission to set forth, with reasonable certainty, the service of the subpoena upon the defendant in the district of Massachusetts. As the subpoena was doubtless thus served, and as that fact is also strongly inferable from the record, it was assumed both at the trial and argument. But, as the fact is vital to the jurisdictional question, it should have been stated upon the record made up and now before us, with strict certainty, and not have been left to implication or intendment. There is no averment whatever to be found in it, of service of the writ of subpoena. The only evidence of the fact is the return of the marshal upon the writ, which is set out; but that does not state where the service took place. There is, indeed, a strong implication arising out of the return as to Syms, namely, that he could not be found to be personally served in the district. But it does not necessarily follow from this, that the service upon Blunt was there. As the jurisdiction of the court over him rests altogether upon this fact, it should not, as before stated, have been left to doubtful implication.

The fact of the service upon the defendant in the district of Massachusetts resting wholly upon the subpoena and return as set forth, they are also subject to remark. The writ of subpoena is not directed to the marshal, for anything that appears in the record; and the return speaks of the service of a notice upon Blunt, which might very well refer to the memorandum accompanying the subpoena, directing that the appearance of the defendants must be entered on or before the return day of the writ, or the bill would be taken pro confesso. The return is vague, even as it respects the proper service of the writ; but the insuperable objection is, that it does not show affirmatively, that the service was made in the district of Massachusetts.

For this reason, a new trial must be granted, with costs to abide the event.

[NOTE. For other cases involving the same patent, see Allen v. Sprague, Case No. 238; Same v. Blunt, Id. 215, Id. 216, and Id. 217.]